UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TENNILLE VIAU,
as Next Friend of K.V.,

               Plaintiff,

vs.

CITY OF TROY, a municipal corporation,
TROY SCHOOL DISTRICT,
JOHN DOE, JANE DOE, ELAINE BO
and SCOTT MERCER,
Jointly and Severally,

               Defendants.

Case No. 21-11169

Hon. Mark A. Goldsmith

_____

| | |
|---|---|
| ERNST CHARARA & LOVELL, PLC | Lori Grigg Bluhm (P46908) |
| Kevin Ernst P44223 | Allan T. Motzny (P37580) |
| Hannah Fielstra P82101 | Attorneys for Defendants |
| Counsel for Plaintiff | Troy, Mercer and Bo |
| 645 Griswold, Suite 4100 | 500 W. Big Beaver Road |
| Detroit, Michigan 48226 | Troy, MI 48084 |
| (313) 965-5555 | (248) 524-3320 |
| kevin@ecllawfirm.com | bluhmlg@troymi.gov |
| hannah@ecllawfirm.com | motznyat@troymi.gov |

_____/

## PLAINTIFF'S RESPONSE TO DEFENDANTS CITY OF TROY, ELAINE BO, AND SCOTT MERCER'S MOTION FOR DISMISSAL OF AMENDED COMPLAINT AND FOR SUMMARY JUDGMENT (ECF NO. 19)

## STATEMENT OF THE ISSUES PRESENTED

Whether Defendants' Motion to Dismiss and Motion for Summary Judgment Should Denied When:

    (1) Plaintiff Pled Viable Claims for Discrimination in Public Accommodations Under Both the Equal Protection Clause of the Fourteenth Amendment and Michigan's Elliott-Larsen Civil Rights and Public Accommodations Acts;

    (2)  Plaintiff Pled a Viable Monell Claim Against Troy Based on the Unconstitutional Practices, Customs, or Policies of its Recreation Department for Segregating Children Based on Race and for its Failure to Adequately Train its Recreation Department Employees Regarding their Constitutional Duty to Refrain from Segregating Children Based on Race;

    (3) The individual Defendants Are Not Entitled to Qualified Immunity; and

    (4) Defendants' Rule 56 Motion is Premature, and it Would be Grossly Unjust for the Court to Consider Affidavits from Parties Outside the Pleadings Prior to Plaintiff's Ability to Probe the Veracity and Credibility of the Affiants' Statements Through Discovery.

Plaintiff's Answer: Yes.

This Court Should Answer: Yes.

# MOST APPROPRIATE AUTHORITY

<u>Cases</u>

*Brennan v Dawson,* 752 F App'x 276, 287 (CA 6, 2018)

*Communities for Equity v Mich High Sch Ath Ass'n,* 178 F Supp 2d 805, 848 (WD Mich, 2001), re-aff'd after remand by *Communities for Equity v Mich High Sch Ath Ass'n*, 459 F3d 676 (CA 6, 2006)

*El-Hallani v Huntington Nat'l Bank*, 623 F App'x 730, 735 (CA 6, 2015)

*Penick v Columbus Bd of Ed*, 583 F2d 787, 792-93 (CA 6, 1978)

*Price's Collision Ctr, LLC v Progressive Hawaii Ins Corp*,  2013 U.S. Dist. LEXIS 154225, at *11 (MD Tenn, Oct. 28, 2013)

*Varlesi v. Wayne State Univ*., 909 F. Supp. 2d 827, 845 (E.D. Mich. 2012)

<u>Statutes</u>

28 USC §1367

LOCAL RULE CERTIFICATION: I, Kevin Ernst, certify that this document complies with Local Rule 5.1(a), including: double-spaced (except for quoted materials and footnotes); at least one-inch margins on the top, sides, and bottom; consecutive page numbering; and type size of all text and footnotes that is no smaller than 10-1/2 characters per inch (for non-proportional fonts) or 14 point (for proportional fonts). I also certify that it is the appropriate length. Local Rule 7.1(d)(3).

## INTRODUCTION

Plaintiff brought race discrimination claims under federal and state law against various defendants for their practice of assigning school age children to soccer teams based on their race or ethnicity and segregating all the non-white children from the all-white "Team America" during a recurring soccer event. These events occurred during a summer soccer league at a public park and were administered by the Troy Recreation Department and Troy District Schools. The Troy Recreation Department Defendants filed a FRCP 12(b)(6) motion to dismiss Plaintiff's complaint. They also filed a FRCP 56 summary judgment motion with supporting affidavits disputing the allegations in Plaintiff's complaint even though discovery has not yet commenced, and no pretrial disclosures have been made. Defendants' motions should be denied.

## STANDARD OF REVIEW

"[T]o survive a motion to dismiss, a complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'a formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'" *Tackett v. M&G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, (2007)).  A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).  Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully."  Id. at 678.  In reviewing a motion to dismiss, the Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff."  *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).  FRCP 8(a)(2) requires only "a short and plain statement of the claim showing the pleader is entitled to relief." "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the […] claim is and the grounds upon which it rests.'" *Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291, 295 (6th Cir. 2008) (quoting *Erickson v. Pardus,* 551 U.S. 89, 93 (2007).

**In this case, instead of taking Plaintiff's factual allegations as true, Defendants have contested virtually all of her material facts and misconstrued**

**her claims.** Defendants submitted affidavits contesting Plaintiff's allegations that they had knowledge of the discriminatory practices of the soccer league. They dispute Plaintiff's claims that Defendants Bo and Mercer jointly participated in the administration of the soccer league. They dispute Plaintiff's claim that children were assigned to soccer teams based on race or ethnicity, claiming instead that Plaintiff was simply not placed on the team she wanted to play on. Defendants also misstated Plaintiff's unlawful discrimination claims, contending she was bringing disparate impact claims when she is clearly bringing a claim for facially discriminatory practices. Obviously, these types of disputes and arguments are not valid, especially in support of a pleadings-stage motion, and especially when brought before any Rule 26 disclosures have been made or any discovery conducted.

## STATEMENT OF FACTS

The Complaint filed by Plaintiff sets forth the following allegations: On or about July 10, 2019, Plaintiff Tennille Viau's Next Friend, ten-year-old K.V., was enrolled in the City of Troy Recreation Department's summer sports camp for soccer. The summer program is administered by the City of Troy Park and Recreation Department in conjunction with the Troy School District. Based on information and belief, the coaches are provided by the Troy School District. The summer sports soccer camp took place in a City of Troy public park. The summer sports soccer camp was jointly administered by Defendants John and Jane Doe, who

jointly participated with various Troy Recreation Department and Troy School District officials in administering the summer sports camp program. ECF 18, ID 136 -37, ¶¶ 11-15.

On July 10, 2019, K.V.'s soccer coach, John Doe, informed Kira and approximately 14 other similarly aged children that they were going to play a game called "Bomb the Country". Her coach then proceeded to ask all the non-white children what country they were from.The coach then proceeded to segregate the children based on their ancestral country of origin and/or color, race, or ethnicity. One Asian-American child indicated that her family was from China, and the coach instructed her that she would be on Team China. Another Argentine-American child indicated that her family was from Argentina, and the coach instructed her that she would be on Team Argentina. K.V., who is biracial, i.e., African American and Caucasian, was asked where she was from and when she responded that she was from the United States of America, the coach placed her on Team Argentina. None of the white children were asked what country they were from, and all were placed on Team America. None of the non-white children were placed on Team America. Thus, the Team America children were all white and all the non-white children were not Team America. ECF 18, ID 137-38, ¶¶ 16-24.

The coach then pitted the segregated children against each other. The children were instructed to take a soccer ball and pretend it was a bomb and kick it into the

other "countries" to blow them up, pitting the white children against the non-white children. The words and actions of soccer coach, John Doe, Troy Recreation Department and/or Troy School District's agent, created an intimidating, hostile, and/or offensive public accommodations/public services environment. K.V. felt offended, intimidated, alienated and stigmatized by being segregated based on her color and/or race. ECF 18, ID 138, ¶¶ 25-28.

On July 11, 2019, Ms. Viau complained about the practice to the City of Troy Recreation Department Director Elaine Bo, to Scott Mercer, the Troy Recreation Supervisor and to Troy official Sarah Davis (hereafter collectively referred to as "the Troy officials"). On July 11, 2019, Scott Mercer, informed Ms. Viau that the game had been played for "years" and the children loved it and requested it. However, the children did not request to play "Bomb the Country" and did not request to be segregated based on their national origin, color or race; the game was chosen by the soccer coach and he also chose to segregate them based on their race. ECF 18, ID 138-39, ¶¶ 26-31.

Ms. Viau was also told by the Recreation Supervisor that the game "might need a name change", but no one addressed the segregation of the children by race, color and/or national origin. On July 12, 2019, K.V.'s soccer coach, Jane Doe, informed the kids that they were going to play a game called "Cowboys vs. Indians." Upon learning of this development, Ms. Viau informed the Troy officials that the

"Cowboys vs. Indians" game was inappropriate and that children were being pitted against each other in an "us versus them" environment. Later on July 12, 2019, upon learning that K.V. had been placed in the Argentina group two days earlier while the white children were placed in the American group, she notified the Troy officials that the children had been segregated by national origin, race and/or color. Elaine Bo responded by stating it was "good to know." ECF 18, ID 139, ¶¶ 32-36.

Once again, no one addressed the segregation of the children based on color, race or country of origin, or the disparate treatment to which K.V. was subjected based on her color and/or race or the intimidating, hostile, or offensive environment that had been created. Ms. Viau then promptly pulled her children out of the Troy summer sports camp. Ms. Viau then promptly pulled her children out of the Troy summer sports camp. K.V. was constructively denied equal access to the summer sports camp program by the intimidating, hostile, and/or offensive environment. ECF 18, ID 139-40, ¶¶ 37-39.

## ARGUMENT

### I. PLAINTIFF PLED VIABLE CLAIMS FOR DISCRIMINATION IN PUBLIC ACCOMMODATIONS UNDER BOTH THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT AND MICHIGAN'S ELLIOTT-LARSEN CIVIL RIGHTS AND PUBLIC ACCOMMODATIONS ACTS.

Defendants argue that Plaintiff failed to meet the *Twombley* pleading standard and failed to state a claim as to the element of race discrimination, specifically contending that Plaintiff's complaint did not contain any allegations of

discriminatory intent or purpose (although Plaintiff's complaint alleges deliberate segregation based on race). First, the *Twombley* pleading requirements are less exacting when the facts are peculiarly within the possession and control of the defendants or where the alleged discrimination is based on factual information that makes the inference of culpability plausible. *See Price's Collision Ctr, LLC v Progressive Hawaii Ins Corp*,  2013 U.S. Dist. LEXIS 154225, at *11 (MD Tenn, Oct. 28, 2013):

> [T]he Twombly plausibility standard, which applies to all civil actions, does not prevent a plaintiff from 'pleading facts alleged 'upon information and belief'" where the facts are peculiarly within the possession and control of the defendant or where the belief is based on factual information that makes the inference of culpability plausible[.]" Arista Records, LLC v. Doe 3, 604 F.3d 110, 120 (2nd Cir. 2010).

*And see Cooke v Bevin*, 2019 U.S. Dist. LEXIS 118077, at *8-9 (ED Ky, July 16, 2019) (same).

Moreover, in public accommodations discrimination cases, the Sixth Circuit has cautioned:

> But we also recognize that at this early stage of the proceedings, a plaintiff is not required to set out detailed factual allegations. Until discovery has begun, the plaintiff simply may not have access to all the facts. Especially in a case where a pattern or practice of discrimination is at issue, the court must be aware that the plaintiff will have limited access to the crucial information regarding how the defendant treated other customers. A court must engage in a "context-specific" analysis of the plausibility of the plaintiff's claims. In doing so, it should take into account "economic[] or logistical[]" circumstances that prevent the plaintiff from obtaining evidence supporting his claim and adjust the plausibility threshold appropriately to account for these difficulties.

*El-Hallani v Huntington Nat'l Bank*, 623 F App'x 730, 735 (CA 6, 2015) (internal

citation omitted; brackets in original).

### A Plaintiff sufficiently alleged a racial discrimination claim under the Equal Protection Clause cognizable under 42 USC §1983.

To prevail on a claim under 42 U.S.C. § 1983, "a plaintiff must set forth facts

that, when construed favorably, establish (1) the deprivation of a right secured by

the Constitution or laws of the United States (2) caused by a person acting under

color of state law." *Miami Univ.*, 882 F.3d 579, 595 (6th Cir. 2018).  The Equal

Protection Clause confers a constitutional right to be free from discrimination based

on race. To establish an equal protection violation, a plaintiff must show that a

government actor discriminated against her by burdening a fundamental right,

targeting a suspect class, or intentionally treating her differently than similarly

situated persons without any rational basis for doing so.   *Loesel v City of*

*Frankenmuth*, 692 F3d 452,461 (6th Cir. 2012) (emphasis added). In this case,

Plaintiff is not bringing an equal protection claim based on the disparate impact of

some facially neutral law. She is bringing and equal protection claim based on

intentional segregation of school age children based on their race and/or ethnicity

while they participated in extracurricular and/or sports activities.

Segregation of school-aged children based on race or ethnicity during

extracurricular activities is prima facia evidence of an equal protection violation.

*See, e.g., Penick v Columbus Bd of Ed*, 583 F2d 787, 792-93 (CA 6, 1978), discussing the history of school segregation cases and stating:

> In Green [v Co Sch Bd, 391 US 430 (1968)], we pointed out that existing policy and practice with regard to faculty, staff, transportation, extracurricular activities, and facilities were among the most important indicia of a segregated system. 391 U.S. at 435 …. **Independent of student assignment**, where it is possible to identify a "white school' or a "Negro school' simply by reference to the racial composition of teachers and staff, the quality of school buildings and equipment, or the organization of sports activities, a prima facie case of violation of substantive constitutional rights under the Equal Protection Clause is shown.

(Emphasis added.)

Plaintiff Viau's complaint alleges a more flagrant violation of substantive constitutional rights under the Equal Protection Clause than considered in *Penick* in the sense that Plaintiff is alleging that children were **deliberately assigned** to different groups based on race or ethnicity. She plausibly alleges that there was a facially discriminatory policy or practice and that the non-white children were assigned to different groups, i.e., "countries" based on their race or ethnicity and that the non-white children were not allowed to be part of "Team America" which was limited to whites only. This clearly alleges a prima facia case of an equal protection violation based on a facially discriminatory practice.

When a policy or practice is facially discriminatory,

> the burden of justifying the classification shifts to Defendant, and the justification must be "exceedingly persuasive." Id. Defendant must show at least that the [challenged] classification serves important

governmental objectives and that the discriminatory means employed are substantially related to the achievement of those objectives. The justification must be genuine, not hypothesized or invented post hoc in response to litigation. And it must not rely on overbroad generalizations about the different talents, capacities, or preferences of [the protected classes].

*Communities for Equity v Mich High Sch Ath Ass'n,* 178 F Supp 2d 805, 848 (WD Mich, 2001), re-aff'd after remand by *Communities for Equity v Mich High Sch Ath Ass'n*, 459 F3d 676 (CA 6, 2006) (brackets in original). Thus, it is Defendants' burden to justify their discriminatory practice according to those standards.

Defendants make the convoluted argument that despite allegations of a facially discriminatory policy or practice, Plaintiff failed to allege a discriminatory intent or purpose. ECF No. 19, PageID.158[1]. In *Communities for Equity*, a case involving an equal protection claim based on a facially discriminatory policy or practice impacting female high school athletes, the Sixth Circuit squarely rejected a nearly identical argument:

> MHSAA also argues that it cannot be liable under the Equal Protection Clause because there is no evidence that MHSAA acted with discriminatory intent. It points out that "[t]here is no evidence that MHSAA [] scheduled [] sports seasons because of 'sexual stereotypes' or as a result of any discriminatory purpose or intent." This argument appears to confuse intentional discrimination--i.e., an intent to treat two groups differently--with an intent to harm….

---

[1] Defendants' reliance on *Village of Arlington Hts v Metro Housing Dev Corp*, 429 US 252, 264 (1977) for this proposition is misplaced. *Arlington Heights* involved an equal protection challenge to a facially neutral zoning law that prohibited multi-family dwellings. The law disparately impacted blacks. However, the Supreme Court ruled that when the law is facially neutral, more than proof of disparate impact is required; the plaintiffs must also prove discriminatory intent.

> Disparate treatment based upon facially gender-based classifications evidences an intent to treat the two groups differently. V.M.I. [United States v. Virginia, 518 U.S. 515, 1996] imposes no requirement upon CFE to show that an evil, discriminatory motive animated MHSAA's scheduling of different athletic seasons for boys and girls.

*Id*. at 694 (some brackets in original).

> See also *Communities for Equity,* 178 F Supp 2d at 849:

> It is common sense that it is not necessary to find animus, i.e., a discriminatory purpose, for a Fourteenth Amendment violation to be present in the case of a classification that on its face differentiates between males and females. If a class of persons is treated differently because of an immutable characteristic like sex, and that different treatment harms that class of persons for reasons not justified by an "exceedingly persuasive" justification, the affected class of persons is no more or less harmed by the unjustified discriminatory treatment merely because Defendant does or does not have animus toward them. A Fourteenth Amendment violation can exist even if it was perpetrated by those who believe that they have honorable intentions.

Plaintiff Viau alleged discrimination based on facially race-or-ethnic-based classifications, likewise immutable characteristics. This ipso fact evidences an intent to discriminate, i.e., to treat groups differently. That is all that is required at the pleading stage, especially given Defendants' burdens to demonstrate that their discrimination served important governmental objectives, that the discriminatory means employed were substantially related to the achievement of those objectives and that Defendants justifications for their actions are 'exceedingly persuasive".

As to Defendant Jane Doe, Plaintiff alleged that the summer sports soccer camp was jointly administered by her and Defendant John Doe, who jointly

participated with various Troy Recreation Department and Troy School District officials in administering the summer sports camp program. Plaintiff also alleged that Jane Doe was her soccer coach along with John Doe, the latter of which directly questioned the children as to their race/ethnicity and assigned them to groups based thereon. This is sufficient at the pleading stage to create a reasonable inference that she participated in segregating the children, especially when Plaintiff has limited access to crucial information, *see El-Hallani, supra*.

As to Defendant Mercer, the Troy Recreation Department Supervisor, Plaintiff alleged that when Ms. Viau informed him of the discriminatory practice, he replied that the game had been played for "years" and the children loved it and requested it. He also told Ms. Viau that the game "might need a name change", but did not address the segregation of the children. From these allegations it can reasonably be inferred that he knew of the practice, approved of it and acquiesced in it. As to Defendant Bo, the Troy Recreation Department Director, Plaintiff alleged that when she informed Ms. Bo of the discriminatory practice, she responded by stating that it was "good to know" but did not address the segregation of the children. From these allegations it can reasonably be inferred that he knew of the practice, approved of it and acquiesced in it. Accordingly, Plaintiff has adequately pled a equal protection claim.

**B  Plaintiff has also sufficiently alleged a discrimination claim under Michigan's Elliott-Larsen Civil Rights Act and Public Accommodations Act.**

To state a claim for denial of equal public accommodations under ELCRA, MCL § 37.2302(a), a plaintiff must establish four elements: "(1) discrimination based on a protected characteristic (2) by a person, (3) resulting in the denial of the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations (4) of a place of public accommodation." *Varlesi v. Wayne State Univ.*, 909 F. Supp. 2d 827, 845 (E.D. Mich. 2012). Similarly, MCL §§ 750.146 and 750.147, provisions of the Michigan Equal Accommodations Act, "prohibit[] a public establishment from denying accommodations, advantages, facilities, and privileges on account of race, color, religion, national origin, sex, or blindness." *Fleming v. U.S. F.B.I. Detroit MI Field Off.*, 2010 U.S. Dist. LEXIS 8397, at *2 (ED Mich, Feb. 2, 2010). Furthermore, Plaintiff's race or ethnicity "does not have to be the only reason, or even the main reason, but it does have to be one of the reasons that made a difference in determining whether to afford plaintiff the full and equal enjoyment of a public accommodation or public service." M Civ JI 108.04.

Finally, as stated in *Communities for Equity*, 178 F Supp 2d at 860:

> The Michigan Supreme Court held that the applicable standard to determine whether unlawful discrimination has occurred because of a discriminatory classification is the same standard used under the Equal Protection Clause of the Fourteenth Amendment of the United States

14

Constitution. Forton, 425 Mich. at 190 (applying to "public accommodation" claims).

Plaintiff was subjected to unlawful discrimination and denied the equal enjoyment of the services, facilities, privileges, advantages, and/or accommodations of the park and summer soccer league when she was subjected to segregation based on her race while attempting to enjoy the park and soccer league for the same reasons set forth in Section IA.

Defendants incredibly contend that segregating K.V. and assigning her to a group based on her race did not offend Michigan's public accommodation law because she "still participated in soccer camp activities each day of the program" and because the "full enjoyment of the soccer camp does not require that each child be placed on a specific team. Being placed on a different team than other children did not deny K.V. the right to fully and equally enjoy the soccer camp." ECF No. 19, PageID.168. Defendants' contention sounds alarmingly like a "separate but equal" rationalization, i.e., K.V. was allowed to play soccer, just not on the white kids' team. Moreover, Plaintiff is not suing Defendants because the soccer league drew lots or randomly assigned children to various teams and K.V. wanted to be on a different team; she is suing because she was assigned to a team based on her race and was segregated from the all-white "Team America."

In support of Defendants' contention that it is permissible under Michigan law to exclude a child's participation in a group based on her race, Defendants rely on

*Scalise v Boy Scouts of America*, 265 Mich App 1 (2005). This reliance is dumbfounding. In *Scalise*, a religious freedom case, a father and son sued the Mount Pleasant School District and The Boy Scouts. The district permitted community organizations, including the Scouts, to use school facilities after school hours. The plaintiff father volunteered to be a Scout den leader, but his membership was revoked when he refused to endorse the group's religious declaration as was required by the Scouts' bylaws. He subsequently removed his son from the Scouts. He then sued Mount Pleasant under Michigan's public accommodation law for allowing the Scouts to use public facilities and exclude him based on his refusal to endorse the group's religious declaration.

Affirming the trial court's dismissal of the claim, the court stated: "Boy Scouts' meetings were not Mt. Pleasant "programs," from which Ben was excluded; rather, they were private meetings of Boy Scouts' members who, as such, have a First Amendment right to disassociate from nonreligious persons." Id. at 31. The court went on to state that the plaintiffs had equal access to the district's facilities and that: "Full enjoyment does not require that patrons of public accommodations or educational facilities be given carte blanche to indiscriminately enter any classroom or gymnasium regardless of the competing interests of others." *Id*. at 32.

The discrimination against KV occurred during a Troy summer sports program, not a private meeting. The decision to segregate KV was made by the

officials administering the program, not by some private group. Moreover, there is no concomitant constitutional right for members of a group to "disassociate" from others based on race. In fact, the Fourteenth Amendment prohibits the government from facilitating such segregation. Are Defendants seriously contending that if the Scouts in the *Scalise* case excluded the father and son based on their race and Mount Pleasant still allowed the Scouts to use its public facilities, that the results in *Scalise* would have been the same? Are Defendants seriously contending that allowing Boy Scouts to meet in a public facility and exclude non-members from their meeting because they refused to follow their bylaws is equivalent to allowing city officials running a summer soccer camp at a public park to segregate children on sports teams based on race? Segregating a child based on her race during a government administered soccer league at a public park and segregating her from the all-white team clearly violates Michigan's public accommodation law.

II. PLAINTIFF PLED A VIABLE *MONELL* CLAIM AGAINST TROY BASED ON THE UNCONSTITUTIONAL PRACTICES, CUSTOMS OR POLICIES OF ITS RECREATION DEPARTMENT FOR SEGREGATING CHILDREN BASED ON RACE AND FOR ITS FAILURE TO ADEQUATELY TRAIN ITS RECREATION DEPARTMENT EMPLOYEES REGARDING THEIR CONSTITUTIONAL DUTY TO REFRAIN FROM SEGREGATING CHILDREN BASED ON RACE.

Troy had an unconstitutional practice, custom and/or policy of acquiescing in the segregation of children based on race during a summer sports league it

administered, and it failed to adequately train its Recreation Department employees

regarding segregating children based on race.

> [A] municipality may be liable if a municipal policy or custom causes the constitutional violation or if the municipality's failure to train employees constitutes a "deliberate indifference" to individuals' constitutional rights. Arrington-Bey v. City of Bedford Heights, 858 F.3d 988, 994 (6th Cir. 2017). A municipality acts with deliberate indifference when it adheres to a policy that the municipality knows or should know has failed to prevent its employees from violating individuals' constitutional rights. Board of Cty. Comm'rs of Bryan Cty., Okl. v. Brown, 520 U.S. 397, 407 (1997). Similarly, a municipality is deliberately indifferent if its officials violate individuals' constitutional rights so often that the need for supplemental training would have been obvious to the municipality's policymakers and those policymakers failed to act. Id.

*Brennan v Dawson,* 752 F App'x 276, 287 (CA 6, 2018) (parallel cites omitted). See

also *Bd of the Co Comm'rs v Brown*, 520 US 397, 407-08 (1997):

> Municipal liability for failure to train may be proper where it can be shown that policymakers were aware of, and acquiesced in, a pattern of constitutional violations . . . . In addition, the existence of a pattern of tortious conduct by inadequately trained employees may tend to show that the lack of proper training, rather than a one-time negligent administration of the program or factors peculiar to the officer involved in a particular incident, is the "moving force" behind the plaintiff's injury.

(Internal citations and quotations omitted.) Furthermore, even a single constitutional

violation resulting from a failure to train can support a *Monnell* claim when the

potential for the constitutional violation is obvious. *Id*. at 409.

In this case, Plaintiff alleged that upon being informed by Ms. Viau that soccer

league students were being segregated by race to play a game called "Bomb the

Country", Recreation Department Supervisor Mercer's responded that the soccer league children had been playing the game "for years" and that the children loved it. Upon being informed of the same thing, Recreation Department Director Bo responded, "good to know."  Neither took any action to address the segregation. From these statements, it can reasonably be inferred that Troy had a practice of allowing the summer soccer league children to be segregated by race that had been going on for years. Troy knew or should have known that this practice would result in constitutional violations.

Moreover, it can reasonably be inferred that the Recreation Department Director is a policy maker for Troy's Recreation Department and that she acquiesced in the unlawful policy. Furthermore, from the fact that the Recreation Department Supervisor and Director did not apparently understand that assigning soccer league children to teams based on race was unlawful discrimination, it is easily inferred that they were not properly trained. It can also reasonably be inferred that the failure to train was a moving force behind the unlawful discrimination. Accordingly, Plaintiff adequately pled a *Monell* claim.

## III. THE INDVIDUAL DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY.

Plaintiff adequately pled avoidance of qualified immunity because the constitutional rights at stake were clearly established. "[G]overnment officials performing discretionary functions generally are shielded from liability for civil

damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is a legal question for the Court to resolve. *Everson v. Leis*, 556 F.3d 484, 494 (6th Cir. 2009) (citing *Elder v. Holloway*, 501 U.S. 510, 516 (1994)).

When resolving a government official's assertion of qualified immunity, the court determines (1) whether the facts the plaintiff has alleged or shown establishes the violation of a constitutional right, and (2) whether the right at issue was clearly established at the time of the incident. *Stoudemire v. Michigan Dep't of Corr.*, 705 F.3d 560, 567 (6th Cir. 2013) (citing *Pearson v. Callahan* 555 U.S. 223, 232 (2009)). Courts may examine the two prongs in any order, depending on the facts and circumstances of each case. *Id.* at 567-68. In Section IA, Plaintiff established the violation of a constitutional right based on the facts alleged in her complaint

In determining whether a law is clearly established, generally court should look to decisions of the Supreme Court and the Sixth Circuit. *Carver v. City of Cincinnati*, 474 F.3d 283, 287 (6th Cir. 2007); *see also Andrews v. Hickman Cty., Tenn.*, 700 F.3d 845, 853 (6th Cir. 2012) ("When determining whether a constitutional right is clearly established, we look first to the decisions of the Supreme Court, then to our own decisions and those of other courts within the

20

circuit, and then to decisions of other Courts of Appeals."); *see also Wilson v. Layne*, 526 U.S. 603, 617 (1999). "[E]xisting precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

The Sixth Circuit also stated that "reading the [qualified immunity] cases together, the Supreme Court has made clear that the *sine qua non* of the 'clearly established' inquiry is 'fair warning.'" *Baynes v. Cleland*, 799 F.3d 600, 612–13 (6th Cir. 2015). Thus, "[w]hile it is apparent that courts should not define clearly established law at a high level of generality, it is equally apparent that this does not mean that 'a case directly on point' is required"; the question is, again, whether "precedent [has] placed the statutory or constitutional question beyond debate." *Id*. (citing *al-Kidd*, 563 U.S. at 741).

As demonstrated in Section IA, the right of school age children to be free from segregation during extracurricular activities and sports has been clearly established by Supreme Court and Sixth Circuit precedent for over 45 years.

## IV. THE COURT SHOULD EXERCISE ITS SUPPLEMENTAL JURISDICTION OVER PLAINTIFF'S STATE LAW CLAIMS.

28 USC 1367 governs the Court's supplemental jurisdiction and provides in relevant part:

> (a) … in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same

case or controversy under Article III of the United States
Constitution….

In this case, Plaintiff's state law claims are so related to her federal claims that
they form part of the same case or controversy. The same operative facts establish
the equal protection and public accommodation claims and the legal principles of
both claims are nearly identical. Furthermore, none of the reasons for declining
supplemental jurisdiction set forth in 28 USC 1367(c) apply. Accordingly, the Court
should exercise its supplemental jurisdiction.

## V. DEFENDANTS' RULE 56 MOTION IS PREMATURE AND IT WOULD BE GROSSLY UNJUST FOR THE COURT TO CONSIDER AFFIDAVITS FROM PARTIES OUTSIDE THE PLEADINGS PRIOR TO PLAINTIFF'S ABILITY TO PROBE THE VERACITY AND CREDIBILITY OF THE AFFIANTS' STATEMENTS THROUGH DISCOVERY.

Defendants Bo, Mercer and Troy have moved for summary judgment based
on Bo's and Mercer's affidavits before they have even made initial disclosures and
thus before Plaintiff has had any opportunity to conduct discovery. Plaintiff needs
the ability to depose all the defendants and depose fact witnesses whose name will
be gleaned from document and deposition discovery and to obtain relevant
documents. This information is needed to test the veracity and credibility of
Defendant's statements, including but not limited to, their denial of knowledge of
the segregation in the soccer program. This information is crucial to Plaintiff's
ability to adequately oppose Defendants' motion. **Exhibit 1, Declaration of**

**Plaintiff's counsel**. Thus, Plaintiff should be granted an opportunity to conduct discovery before it has to respond to Defendants' motion and affidavits, see FRCP 56(d).

Summary judgment motions before any discovery are premature. *See Williams v Goodyear Tire & Rubber Co*, 2012 U.S. Dist. LEXIS 50972, at *13-15 (WD Tenn, Apr. 11, 2012) ("it is appropriate to use the Rule 56(d) "safety valve" to head off a premature swing of the "summary judgment axe"). *See also Martinez v First Class Interiors of Naples, LLC*,  2020 U.S. Dist. LEXIS 106961, at *23 (MD Tenn, June 18, 2020):

> **because summary judgment is premature until parties have a full opportunity to conduct discovery,** a Rule 56(d) motion requesting time for discovery should be granted "almost as a matter of course unless the non-moving party has not diligently pursued discovery of the evidence") (quoting Convertino v. United States DOJ, 684 F.3d 93, 99, 401 U.S. App. D.C. 297 (D.C. Cir. 2012)).

(Emphasis added.) Plaintiff not only did not have a full opportunity to conduct discovery, she had **zero** opportunity to conduct discovery. Accordingly, Defendants' motion for summary judgment is premature.

As a final matter, Rule 56(d) states that when a non-moving party is granted the opportunity for discovery before it must respond to a motion for summary judgment, "the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any appropriate order." *Williams, supra* at *13-15. The Court should deny Defendants' Rule 56

23

motion without prejudice and allow Plaintiff a full opportunity to conduct discovery before having to respond to any Rule 56 motions.

WHEREFORE, Defendants' FRCP 12(b)(6) motion should be denied on the merits and their FRCP 56 motion should be denied without prejudice as premature.

Respectfully Submitted,

/s/*Kevin Ernst*
Kevin Ernst (P44223)
Dated: November 10, 2021      Counsel for Plaintiff

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 10, 2021, I electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send notification of such filing to all attorneys of record.

Respectfully submitted,

<u>/s/ Hannah R. Fielstra</u>
Hannah R. Fielstra (P82101)
Attorney for Plaintiffs
Ernst Charara & Lovell, PLC
645 Griswold Street, Suite 4100
Detroit, Michigan 48226
Phone: (313) 965-5555
Fax: (313) 965-5556
hannah@ecllawfirm.com

Dated: November 10, 2021