UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TENNILLE VIAU, *et al.*,

                Plaintiffs,         Civil Action No. 21-11169

v.                                          Mark A. Goldsmith
                                          United States District Judge

CITY OF TROY, *et al.*,

                                          David R. Grand
                Defendants.       United States Magistrate Judge
_____/

**REPORT AND RECOMMENDATION TO DENY DEFENDANTS' MOTION
FOR DISMISSAL AND FOR SUMMARY JUDGMENT (ECF No. 19)**

On May 20, 2021, plaintiff Tennille Viau ("Viau"), as next friend of K.V., a minor, filed a four-count complaint against the City of Troy and two of its employees, Elaine Bo and Scott Mercer. (ECF No. 1). Viau also named as defendants two City of Troy agents, identified in the complaint as John Doe and Jane Doe. (*Id.*). Subsequently, Viau filed an amended complaint, which added the Troy School District as a defendant. (ECF No. 18). On January 7, 2022, an Order of Reference was entered, referring all pretrial matters to the undersigned pursuant to 28 U.S.C. § 636(b). (ECF No. 32).

On October 18, 2021, the City of Troy, Elaine Bo, and Scott Mercer (collectively the "City Defendants")[1] filed a motion for dismissal of Viau's amended complaint and for summary judgment, pursuant to Fed. R. Civ. P. 12(b)(6) and 56. (ECF No. 19). On November 10, 2021, Viau filed a response in opposition to the City Defendants' motion

---

[1] Defendant Troy School District did not join in the motion.

(ECF No. 27), and on November 22, 2021, the City Defendants filed a reply (ECF No. 30). The Court heard oral argument on the City Defendants' motion on April 21, 2022.

## I.   RECOMMENDATION

For the following reasons, **IT IS RECOMMENDED** that the City Defendants' Motion for Dismissal and for Summary Judgment **(ECF No. 19)** be **DENIED**.

## II.   REPORT

### A.   The Allegations in Viau's Amended Complaint

In the amended complaint, Viau alleges that, on July 10, 2019, her ten-year-old child, K.V., was enrolled in the City of Troy Recreation Department's summer sports camp for soccer, which was "jointly administered" by John Doe and Jane Doe. (ECF No. 18, PageID.135-37). Viau alleges that John Doe was K.V.'s soccer coach and that he told K.V. (and others) that they were going to play a game called "Bomb the Country." (*Id.*, PageID.137). According to the amended complaint, John Doe asked all the non-white children, including K.V., who is biracial, what country they were from, and then placed all the white children on Team America and all the non-white children on other teams designated by their respective national origins and/or races. (*Id.*, PageID.137-38). For instance, "[o]ne Asian-American child indicated that her family was from China, and the coach instructed her that she would be on Team China," while an "Argentine-American child indicated that her family was from Argentina, and the coach instructed her that she would be on Team Argentina." (*Id.*, PageID.137). Allegedly, K.V. was placed on Team Argentina, even though she told the coach she was from the United States. (*Id.*). Viau alleges that "[n]one of the white children were asked what country they were from, and all

were placed on Team America." (*Id.*). Viau further alleges that John Doe then had the children play the "Bomb the Country" game, "pitting" the white children against the non-white children. (*Id.*, PageID.138).

Viau alleges that, on July 11, 2019, she "complained about the practice to the City of Troy Recreation Department Director Elaine Bo, to Scott Mercer, the Troy Recreation Supervisor and to [another Troy official who is not a named defendant]," and that in response, Mercer "informed Ms. Viau that the game had been played for 'years' and the children loved it and requested it," though he also allegedly admitted that the game might need a "name change." (*Id.*, PageID.138-39). According to Viau, however, no one addressed the alleged segregation of the children by race and/or ethnicity.

Viau further alleges that, on July 12, 2019, soccer coach Jane Doe informed the children that they were going to play a game called "Cowboys and Indians." (*Id.*, PageID.139). According to the amended complaint, Viau also complained to "Troy officials" that this game was inappropriate because of its "us versus them" environment. (*Id.*). It is also alleged that, later on July 12, 2019, Viau notified Troy officials that children had been segregated by national origin, race, and/or color on July 10, 2019, and that Ms. Bo responded by saying "good to know." (*Id.*). Viau alleges that she "promptly" pulled K.V. (and another child of hers) out of the remainder of the summer sports camp programs. (*Id.*).

In Count I of the amended complaint, Viau brings a claim, pursuant to 42 U.S.C. § 1983, against all defendants, alleging a violation of the Fourteenth Amendment's Equal Protection Clause. Count II alleges, in relevant part, that the City of Troy is liable under

3

*Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658 (1978), because it "had a custom and practice of allowing segregation based on race, color and/or national origin as evidenced by its Recreation Director admitting that the segregation practice had been going on 'for years.'" (*Id.*, PageID.140-41). In Count III, Viau alleges a violation of the equal accommodation provisions of Michigan's Elliott-Larsen Civil Rights Act ("ELCRA"), MCL 37.2101, *et seq*., against all defendants. Finally, Count IV alleges a denial of public accommodations under MCL 750.147 against all defendants.

The City Defendants now move for dismissal or summary judgment as to all of Viau's claims, relying in part on affidavits of Mercer and Bo. In Viau's response she presents substantive arguments, but also argues that the City Defendants' motion for summary judgment is premature and that she should have the opportunity to depose Mercer and Bo before the Court considers their request to have the claims against them dismissed.

### B. Standard of Review

#### 1. *Motion to Dismiss*

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests a complaint's legal sufficiency. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough

4

fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556. Put another way, the complaint's allegations "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original) (citing *Twombly*, 550 U.S. at 555-56).

In deciding whether a plaintiff has set forth a "plausible" claim, the Court must accept the factual allegations in the complaint as true. *Id.*; *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007). That tenet, however, "is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," to prevent a complaint from being dismissed on grounds that it fails to comport sufficiently with basic pleading requirements. *Iqbal*, 556 U.S. at 678; *see also Twombly*, 550 U.S. at 555; *Howard v. City of Girard, Ohio*, 346 F. App'x 49, 51 (6th Cir. 2009). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will … be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

    2.  *Summary Judgment*

Pursuant to Federal Rule of Civil Procedure 56, the Court will grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Pittman v. Cuyahoga County Dep't of Children & Family Servs.*, 640 F.3d 716, 723 (6th Cir. 2011). A fact is material if it might affect the outcome of the case under governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining

whether a genuine issue of material fact exists, the Court assumes the truth of the non-moving party's evidence and construes all reasonable inferences from that evidence in the light most favorable to the non-moving party. *See Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006).

The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion and must identify particular portions of the record that demonstrate the absence of a genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). In response to a summary judgment motion, the opposing party may not rest on its pleadings, nor "'rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact' but must make an affirmative showing with proper evidence in order to defeat the motion." *Alexander*, 576 F.3d at 558 (internal quotations omitted).

### C. Analysis

    1. *The City Defendants' Motion Should be Denied as to Viau's Equal Protection Claim*

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48

(1988). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly violated. *See Albright v. Oliver*, 510 U.S. 266, 271 (1994). Here, in relevant part, Viau alleges that the City Defendants violated K.V.'s rights under the Fourteenth Amendment's Equal Protection Clause by discriminating against her on the basis of race, color, and/or national origin.

The Equal Protection Clause is "essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). To state an equal protection claim, Plaintiffs must adequately plead that "the government treated [K.V.] disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis." *Courser v. Allard*, 969 F.3d 604, 617 (6th Cir. 2020) (internal quotations omitted).

In this case, Viau alleges that K.V. was intentionally segregated, based on her race and/or ethnicity, while she participated in a summer sports camp run by the City of Troy. Specifically, Viau claims that there was a facially discriminatory policy or practice, by which soccer coach John Doe deliberately assigned children to different groups based on race or ethnicity, with only white children being assigned to Team America and all non-white children and those who advised they had national origins outside the United States being assigned to play for different "countries." Courts have recognized that the segregation of school-aged children based on race or ethnicity during extracurricular activities is *prima facie* evidence of an equal protection violation. *See, e.g., Penick v.*

7

*Columbus Bd. of Ed.*, 583 F.2d 787, 792-93 (6th Cir. 1978).

Where, as here, the plaintiff has made out a *prima facie* case of an equal protection violation based on a facially discriminatory policy or practice,[2] the burden of justifying the classification shifts to the defendant, and the justification must be "exceedingly persuasive." *U.S. v. Virginia*, 518 U.S. 515, 533 (1996). Defendant "must show at least that the [challenged] classification serves important governmental objectives and that the discriminatory means employed are substantially related to the achievement of those objectives." *Id.* (internal quotations omitted). Dismissal of Viau's Equal Protection Clause claim is not warranted.

The City Defendants also move for summary judgment on Plaintiffs' § 1983 claims against Mercer, Bo, and the City of Troy. The Court will first address the claims against the individuals and then the City.

    a. *Mercer and Bo*

As an initial matter, Viau does not allege that either Mercer or Bo were directly involved in the segregation of K.V. or the other children participating in the soccer camp. And, to the extent Viau suggests that Mercer and/or Bo should be held liable based solely on their supervisory roles, such a claim fails as a matter of law because supervisory liability

---

[2] In their motion, the City Defendants argue that Viau's equal protection claim fails because she does not allege that the defendants "acted with racially discriminatory intent or purpose." (ECF No. 19, PageID.158). As Viau notes, however, this argument fails in cases such as this one, which involve an equal protection claim based on a *facially discriminatory policy*. (ECF No. 27, PageID.246 (citing *Communities for Equity v. Michigan High Sch. Athletic Ass'n*, 459 F.3d 676, 694 (6th Cir. 2006) (disparate treatment based on facially gender based classifications does not require evidence of an "evil, discriminatory motive"))).

8

cannot attach under § 1983 where the allegation of liability is based upon a mere failure to act. *See Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999). Rather, supervisory liability under § 1983 requires a plaintiff to show that the supervisor encouraged or condoned the specific incident of misconduct or in some other way directly participated in it. *See Sova v. City of Mt. Pleasant*, 142 F.3d 898, 904 (6th Cir. 1998). At a minimum, then, a § 1983 plaintiff must show that a supervisory official implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending subordinate. *See Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). Because each defendant is liable only for his or her own conduct, the Court must analyze Mercer's and Bo's potential § 1983 liability separately.

*i. Mercer is Not Entitled to Summary Judgment*

In her operative complaint, Viau alleges that Mercer was the "Recreation Supervisor," and that after Viau complained to Mercer about "the practice" of dividing the children based on race, he "informed Ms. Viau that the game had been played for 'years' and the children loved it and requested it," though he also allegedly admitted that the game might need a "name change." (*Id.*, PageID.138-39). The Court agrees with Viau that "[f]rom these allegations it can reasonably be inferred that [Mercer] knew of the practice, approved of it and acquiesced in it." (ECF No. 27, PageID.248).

Mercer moves for summary judgment, relying on an affidavit in which he avers that he first became aware that "Bomb the Country" was being played when he reviewed a July 11, 2019 email from Viau that she had sent to the Troy Recreation Department. (ECF No. 19-3, PageID.186, 189). In other words, Mercer is contending that he neither knew of,

9

approved, or acquiesced the alleged practice and/or John Doe's act of dividing children based on their race and ethnicity. To that end, Mercer avers:

> 12. Based on my review of the email, it appeared Tennille Viau was only complaining about the violent implications of playing a game called "Bomb the Country." The email did not complain that [] there was any discrimination or segregation based on race or national origin.
>
> 13. Immediately upon reviewing the email, I forwarded it to Brian Zawislak with the Troy School District since he was the person most familiar with the coaches and lesson plans for the soccer camp.
>
> 14. Brian Zawislak informed me the game "Bomb the Country" was a camp favorite and had been played for many years and that kids requested it and that before the email, no person had ever complained about the game. Brian Zawislak informed me they could come up with a name change.
>
> 15. After being provided the above information, I contacted Tennille Viau and informed her of what Brian Zawislak said to me.
>
> 16. Prior to July 11, 2019, I was not aware that a game called "Bomb the Country" was being played at the soccer camp.

(*Id.*, PageID.186-87).

At least given the case's present procedural posture – with discovery not having commenced – Mercer is not entitled to summary judgment. First, the Court notes that Mercer characterizes Viau's e-mail in the light most favorable *to him*, when the Court must construe it in the light most favorable *to Viau*. *Ciminillo*, 434 F.3d at 464. Whereas Mercer avers that from his review of Viau's e-mail, "it appeared [she] was only complaining about the violent implications of playing a game called 'Bomb the Country,'" and that she "did not complain that [] there was any discrimination or segregation based on race or national origin," one could reasonably reach the opposite conclusion. Indeed, in her e-mail, Viau

10

asserted, "[c]hildren were put into groups and asked what country we're [sic] they from. A child said she was from Argentina, so her group became Argentina. Another was from America, so that group became America and so forth. They were then instructed to take a green ball and pretend it was a bomb and kick it into the other countries to blow them up." (ECF No. 19-3, PageID.189). Thus, although a portion of Viau's e-mail criticized the violence implicit in the game (*id.*) (Viau indicating that she "shocked that a government/city program would . . . encourage[] [children] to pretend they are blowing up their own country and other countries with a soccer ball"), taken in the light most favorable to Viau, she also complained about grouping the children based on their national origin and race.

Second, although Mercer avers in his affidavit that he "was not aware" of the "Bomb the Country" game until after Viau sent her July 11, 2019 e-mail, Viau has not yet had an opportunity to conduct discovery on those matters, and her then-attorney supplied a declaration indicating that discovery is needed "to obtain relevant documents to test the veracity and credibility of Defendant's statements, including but not limited to ***their denial of knowledge of the segregation*** in the soccer program . . . ." (ECF No. 27-1) (emphasis added). *See* Fed. R. Civ. P. 56(d) (providing that the Court may deny a summary judgment motion where the "nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition . . .").

In sum, because the Court can reasonably infer from Viau's allegations that Mercer "knew of the practice, approved of it and acquiesced in it," summary judgment in his favor

11

is not appropriate at this time. (ECF No. 27, PageID.248).[3]

>> ii.   *Bo is Not Entitled to Summary Judgment*

Viau's claim against Bo is somewhat weaker, but the allegations in the complaint, construed in the light most favorable to Viau, precludes the Court from granting summary judgment in Bo's favor at this time. In her complaint, Viau alleges that Bo was the City of Troy's "Recreation Department Director," and that when Viau notified Bo that children had been segregated by race or ethnicity, Bo responded by saying "good to know." (ECF No. 18, PageID.139). While this alleged response may merely reflect a lack of professionalism and sensitivity to Viau's feelings, one could also reasonably interpret it as being so callous that it indicates Bo knew of, approved of, or acquiesced in the alleged segregation of children on the basis of race and/or ethnicity. While Bo, like Mercer, has supplied an affidavit in which she disclaims any knowledge of the alleged discriminatory practice prior to Viau's communication (ECF No. 19-4), that is a factual matter on which Viau is entitled to take discovery before having to respond to a motion for summary judgment on the issue. Fed. R. Civ. P. 56(d).

In sum, because the Court can reasonably infer from Viau's allegations that Bo "knew of the practice, approved of it and acquiesced in it," summary judgment in her favor is not appropriate at this time. (ECF No. 27, PageID.248).

---

[3] Moreover, because it was clearly established that segregating school-aged children based on race or ethnicity during extracurricular activities is *prima facie* evidence of an equal protection violation, *Penick*, 583 F.2d at 792-93, Mercer's argument that he is entitled to qualified immunity lacks merit. This obviously applies equally to Bo's request for qualified immunity.

>  b. *The City of Troy is Not Entitled to Summary Judgment on Viau's* Monell *Claim*

Plaintiffs also plead a § 1983 claim against the City of Troy. As a municipality, the City of Troy may not be held vicariously liable for the actions of its employees under § 1983. *See Connick v. Thompson*, 563 U.S. 51, 60 (2011). Rather, a municipality faces § 1983 liability only when its official policy or custom directly causes the plaintiff's injury. *Id*. Accordingly, "a plaintiff seeking to impose liability on a municipality under § 1983 [must] identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." *Board of Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 403 (1997) (quoting *Monell*, 436 U.S. at 694). To do this, the plaintiff must plead sufficient facts to show "'a direct causal link' between the policy and the alleged constitutional violation such that the [municipal policy] can be deemed the 'moving force' behind the violation." *Graham ex rel. Estate of Graham v. County of Washtenaw*, 358 F.3d 377, 383 (6th Cir. 2004) (citation omitted).

Here, Viau alleges that the City of Troy "had a custom and practice of allowing segregation based on race, color and/or national origin as evidenced by [Mercer] admitting that the segregation practice had been going on 'for years.'" (ECF No. 18, PageID.140-41). She supports her contention by alleging that Mercer told her that "the practice" of dividing the children based on race was part of a "game [that] had been played for 'years' and the children loved it and requested it . . . ", and that Bo responded "good to know" when advised of the discriminatory segregation. (*Id.*, PageID.138-39). Viau also alleges that Mercer was the City of Troy's "Recreation Supervisor" and that Bo was its "Recreation Department Director," which reasonably suggests each had authority over the adoption and

13

implementation of the alleged policy.

In short, for the reasons explained above, and taken in the light most favorable to Viau, these allegations contain sufficient factual matter to satisfy the *Twombly/Iqbal* "facial plausibility" standard for a *Monell* claim against the City of Troy. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 556.[4]

For all of these reasons, the City of Troy's request for summary judgment should be denied.

### 2. The City Defendants' Motion Should be Denied as to Viau's State Law Claims

Viau also pleads two state law claims against all defendants – one for denial of equal public accommodations under the ELCRA, and one for violation of the Michigan Equal Accommodations Act. In order to succeed on her ELCRA claim, Viau must establish: (1) discrimination based on a protected characteristic, (2) by a person, (3) resulting in the denial of the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations, (4) of a place of public accommodation. *See Varlesi v. Wayne State Univ.*, 909 F. Supp. 2d 827, 845 (E.D. Mich. 2012). Similarly, the Michigan Equal Accommodations Act "prohibits a public establishment from denying

---

[4] While Mercer and Bo aver in their declarations that they did not have knowledge of the alleged discriminatory practice until after Viau alerted them to it, as explained above, that is a matter on which Viau should be permitted discovery before having to respond to the City's summary judgment arguments. Moreover, even if Mercer and/or Bo were unaware of the game until Viau advised them of it, Mercer avers that "Brian Zawislak with the Troy School District" "informed [him] the game 'Bomb the Country' was a camp favorite and had been played for many years," and the relationship between the City of Troy and the Troy School District is an issue to be fleshed out through the discovery process before the Court considers the City of Troy's potential entitlement to an award of summary judgment. (ECF No. 19-3, PageID.187).

accommodations, advantages, facilities, and privileges on account of race, color, religion, national origin, sex, or blindness." *Fleming v. U.S. F.B.I. Detroit MI Field Off.*, (E.D. Mich. Feb. 2, 2010). Viau has pleaded sufficient facts to allow these state law claims to proceed at this stage of the case.

Viau alleges that K.V. was segregated from other children based on race and national origin, which clearly are protected classes under the ELCRA and facially covered by Michigan's Equal Accommodations Act. Indeed, the only real dispute raised by City Defendants is whether John Doe's alleged conduct resulted in the denial of the full and equal enjoyment by K.V. of the soccer camp. The City Defendants' only substantive argument is that K.V. was not denied the full enjoyment of the soccer camp because she "still participated in soccer camp activities each day of the program[.]" (ECF No. 19, PageID.168). This argument lacks merit.

As the Court explained at oral argument, the City Defendants' argument is precisely the type the United States Supreme Court rejected more than 65 years ago when it summarily upheld the trial court's holding that racial segregation on busses violated the Fourteenth Amendment's Equal Protection Clause despite the fact that all passengers rode the same bus to the same stops. *Gayle v. Browder*, 352 U.S. 903 (1956). Although here Viau's claims allege a violation of the ELCRA and the Michigan Equal Accommodations Act, the Michigan Supreme Court has held that in evaluating protected class discrimination under Michigan's Civil Rights Act or under the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution, "the standard to be applied is the same." *Dep't of C.R. ex rel. Forton v. Waterford Twp. Dep't of Parks & Recreation*, 425 Mich.

15

173, 190, 387 N.W.2d 821, 829 (1986). *See also Communities for Equity v. Michigan High Sch. Athletic Ass'n*, 178 F. Supp. 2d 805, 861 (W.D. Mich. 2001), *aff'd sub nom. Communities for Equity v. Michigan High Sch. Athletic Ass'n, Inc.*, 377 F.3d 504 (6th Cir. 2004), *cert. granted, judgment vacated*, 544 U.S. 1012, 125 S. Ct. 1973, 161 L. Ed. 2d 845 (2005), *and aff'd*, 459 F.3d 676 (6th Cir. 2006) (holding that "the standard for decision under Plaintiffs' ELCRA claim is the same as under their Fourteenth Amendment claim."). The Court sees no reason to apply a different analysis to Viau's Equal Accommodations Act claim which, as explained above, requires the plaintiff to prove very similar elements to her ELCRA claim.

In short, the mere fact that K.V. "still participated" in camp activities doesn't mean she was not denied the "full and equal" enjoyment of those activities because her participation was marred by John Doe's alleged race/national origin-based discriminatory conduct. *Id.* Indeed, in her complaint, Viau alleges, "[t]he words and actions of soccer coach, John Doe, Troy Recreation Department and/or Troy School District's agent, created an intimidating, hostile, and/or offensive public accommodations/public services environment," and that "K.V. felt offended, intimidated, alienated and stigmatized by being segregated based on her color and/or race." (ECF No. 18, PageID.138). Moreover, Viau alleges that as a result of the challenged conduct, she "promptly pulled her children out of the Troy summer sports camp." (*Id.*, PageID.140).

The principal case relied on by the City Defendants – *Scalise v Boy Scouts of America,* 265 Mich. App. 1 (2005) – does not change the analysis. In that case, the plaintiff child chose not to participate in a Boy Scouts program because he disagreed with its

16

"declaration of religious principles." The Boy Scouts were later allowed to use a City of Mt. Pleasant school building for its meetings, which meant that the particular area used by the Boy Scouts were not available to the plaintiff during those times. The plaintiff sued, asserting among a slew of other claims, that Mt. Pleasant's arrangement with the Boy Scouts violated his rights under Michigan's Civil Rights Act and Equal Accommodations Act.

The Michigan Court of Appeals rejected those claims. First, the court found that Mt. Pleasant's allocation of certain school rooms on certain days was done pursuant to a "neutral access policy," and therefore "did not *discriminate* against plaintiffs' full and equal use" of the facilities in question. *Scalise*, 265 Mich. App. at 31 (emphasis added). Second, the court explained, "[f]ull enjoyment does not require that patrons of public accommodations or educational facilities be given carte blanche to indiscriminately enter any classroom or gymnasium regardless of the competing interests of others. That plaintiffs might be required to share separate areas of the same building with a religious or other exclusionary group is an onus that must be suffered in a democratic society. No proof has been offered to show that, despite Boy Scouts' presence, plaintiffs could not also fully enjoy use of Mt. Pleasant's facilities." *Id.* at 32.

Viau's case is distinguishable from *Scalise* in a few important respects. First, whereas Mt. Pleasant allocated school space based on a "neutral access policy," the alleged policy at issue in this case was facially discriminatory in that it segregated children based on race and/or national origin. Second, while it makes sense that multiple groups cannot effectively share the same classroom space at the same time, there is no similar logical

17

reason why children of different races or national origins would need to be segregated to play a soccer game. Finally, the *Scalise* case was decided after the parties had conducted discovery, whereas Viau has not yet had that opportunity in this case. For all of these reasons, the City Defendants' reliance on *Scalise* is unavailing.

The Court, however, must determine which of the City Defendants Viau may assert these state law claims against. The Court finds that the same reasoning discussed above with respect to Viau's § 1983 claims applies; Viau has alleged sufficient facts in her complaint from which one could reasonably conclude the City of Troy, Mercer, and Bo knew of, approved of, or acquiesced in the alleged wrongful conduct that forms the basis of these state law claims. Thus, at least without this case fist proceeding through discovery, summary judgment is not appropriate.

Accordingly, with respect to Viau's state law claims, the City Defendants' instant motion should be denied.

### III. CONCLUSION

For the reasons set forth above, **IT IS RECOMMENDED** that the City Defendants' Motion for Dismissal and for Summary Judgment **(ECF No. 19)** be **DENIED**.

Dated: June 10, 2022  
Ann Arbor, Michigan

s/David R. Grand  
DAVID R. GRAND  
United States Magistrate Judge

## NOTICE TO THE PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir.1991); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir.1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir.1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir.1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge. A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on June 10, 2022.

s/Eddrey O. Butts<br>
EDDREY O. BUTTS<br>
Case Manager